## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALAN LAYMON,                          )
                                      )
            Plaintiff,                )
                                      )        2:20-cv-01938
            v.                        )
                                      )
HONEYWELL INTERNATIONAL INC.,         )
                                      )
            Defendant.                )
                                      )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

This case involves claims of age and sex discrimination and retaliation in the workplace brought by Plaintiff, Alan Laymon ("Plaintiff" or "Laymon"), against Defendant, Honeywell International, Inc. ("Defendant" or "Honeywell"). Before the Court is Defendant's Motion for Summary Judgment as to all claims (ECF No. 43). For the reasons stated below, the Defendant's Motion is GRANTED in full and summary judgment is granted in its favor.

## I.    FACTUAL BACKGROUND[1]

### A.  January through October 2019

Plaintiff began his employment with Defendant as Director of Marketing for Honeywell's

---

[1] The facts enumerated here are undisputed unless otherwise noted. However, as Defendant accurately points out (*see* ECF No. 48, at 7–12), Plaintiff's "Statement of Disputed Material Facts" (ECF No. 47-1), fails to conform to the requirements of both Fed. R. Civ. P. 56(c)(1) and Local Rule 56(C)(1) in that it contains legal argument, unresponsive statements, denials of unstated facts, and assertions that are not supported by appropriate citations to the record. For instance, in unsupported response to Defendant's assertion that, "at the request of HR," a Honeywell employee "completed and signed a 2019 performance evaluation" of Plaintiff, Plaintiff does not deny this fact, but instead argues that "[i]t is disputed that [Plaintiff] was ever afforded the benefit of a midyear or end of year review," and further counters that the PIP on which Defendant was placed was "invalid," that the decision to terminate him was "unjust" and that the completion of the form was "nothing more than performance art." (ECF 47-1, at ¶ 70.) Accordingly, the Court disregards all statements in Plaintiff's Statement of Disputed Material Facts that fail to conform with the requirements of Fed. R. Civ. P 56(c)(1) and Local Rule 56(C)(1) and instead notes only those genuine disputes of material fact properly noted and supported by Plaintiff. *See Thomas v. Bronco Oilfield Svcs.*, 503 F. Supp. 3d 276, 286 n.2 (W.D. Pa. 2020).

Voice Division in January 2019. (Pl.'s SMF, ECF No. 47-1 ¶ 1 [hereinafter Pl.'s SMF].) Plaintiff became aware of the job opening at Honeywell through Honeywell Voice General Manager William Birnie, who Plaintiff knew through the tennis camp that both Birnie and Plaintiff's children attended. (*Id.* ¶¶ 7–8.)

At the time of his hire, Plaintiff was fifty (50) years old and living in Florida. (*Id.* ¶¶ 3, 6.) At the time he was hired, it was an express term of Plaintiff's employment that he relocate to Pittsburgh, Pennsylvania by January 1, 2020. (Pl.'s App'x, ECF No. 47-2, at 125 [hereinafter Pl.'s App'x].)

From the beginning of Plaintiff's employment in January 2019 through October of that year, Plaintiff reported directly to Birnie. (Pl.'s SMF ¶ 12.) During the time that Plaintiff was reporting to Birnie, Plaintiff also interacted with Chris Feuell,[2] the Chief Marketing Officer of Defendant's Intelligrated business and Tracy Niehaus, Defendant's Director of Marketing. (*Id.* ¶¶ 14–15.)

Both Parties agree that even while Plaintiff was reporting to Birnie, Feuell had a negative impression of Plaintiff's performance. According to Defendant, "[i]n the early months of Laymon's employment, Feuell determined that Laymon was not meeting the objectives of his role." (ECF No. 44, at 10.) For example, "[w]hen Feuell asked Laymon for a launch and marketing

---

[2] The extent of that interaction is a matter of some dispute. Defendant characterizes the relationship between Plaintiff and Feuell as a "dotted line (job-function based) reporting relationship." (ECF No. 45, ¶¶ 14–15.) In Plaintiff's Statement of Disputed Material Facts, Plaintiff conceded that he had a "dotted line" reporting relationship to Feuell "because she was at the same reporting level as his supervisor" but disputes that he had a job-function based reporting relationship with Feuell. (Pl.'s SMF ¶ 14.) However, in Plaintiff's deposition, he conceded that a dotted line reporting relationship could "mean a functional reporting relationship" and that Feuell was "the chief marketing officer" while he was "in a marketing role" and that "the org chart had . . . a dotted line" between them. (ECF No. 46-1, Laymon Dep., 57:19–25, 58–21.) Moreover, Plaintiff stated that he "believed" he met with Feuell "during the time that Birnie was [his] supervisor," but that the meetings were "very infrequent[]." (*Id.* at 84:19–24.) Thus, at a minimum, even when read in the light most favorable to Plaintiff, the record reflects that Feuell and Plaintiff had such workplace interaction.

plan" for two new critical products just two months in advance of their launch, "Laymon provided only a vague calendar with program execution dates—not a launch or marketing plan." (*Id.*) Overall, Feuell believed that Laymon "presented a process that lacked detail, marketing materials, training programs, metrics, or targets." (*Id.*) Defendant states that Feuell provided Birnie with negative feedback about Plaintiff to include in his mid-year review, but Birnie never performed a mid-year performance review for Plaintiff.[3] (Def.'s SMF, ECF No. 45 ¶¶ 26–27 [hereinafter Def.'s SMF].)

Feuell formalized her negative impression of Plaintiff in a document that was created in or around October 2019 that plotted marketing employees on an axis comparing their individual behavior and results to "Honeywell Standard." (Def.'s App'x, ECF No. 46-1, at 172 [hereinafter Def.'s App'x].) Feuell rated Plaintiff's behavior as "at Honeywell Standard" but rated his performance as "below Honeywell Standard." Plaintiff was one of three employees identified as having a "placement issue," meaning that his skills and/or performance did not fit his assigned role. (*Id.*)

Plaintiff, for his part, contends that Feuell's negative evaluation of him and his work was unfounded, but does not, on the Court's reading of the materials, dispute the specific factual allegations described above.[4] Instead, he claims that Feuell's negative evaluation of him was based

---

[3] Plaintiff agrees that Birnie never conducted a mid-year performance review, but states that Feuell's claim that she provided Birnie with such criticism is "not supported by the record." (Pl.'s SMF ¶ 26.) However, in the portion of the record to which Plaintiff cites to support that assertion, Birnie says that he does not recall "one way or the other" whether he had "specific discussions with . . . Feuell about [Plaintiff's] performance." (Pl.'s App'x, Birnie Dep. 60:21–24; 61:1–5.) In contrast, Feuell unequivocally states that she provided such feedback. (ECF No. 46-1, Feuell Dep. 72: 3–13.)

[4] For instance, in Plaintiff's Statement of Disputed Material Facts, in response to Defendant's assertions summarized above, Plaintiff states: "It is disputed that Plaintiff did not complete the objectives of the job that he was hired to do. It is further disputed that Plaintiff did not provide requested launch and marketing plans." However, Plaintiff does not support this assertion with a relevant citation to the record as required by LCvR 56(C)(1)(b)—for instance a statement in Plaintiff's deposition that he in fact provided the requested material or any other discovery documents that would support such an inference.

on discriminatory animus, focusing on two facts: first, Plaintiff's receipt of Honeywell's "Bravo" award (ECF No. 47, at 3, 5; Pl.'s App'x, Laymon Dep. 73:13–24) and second, Feuell's submission of a formal complaint regarding Birnie and Plaintiff's purported misuse of travel funds. (*See* ECF No. 47, at 3–4; Pl.'s SMF ¶ 19.)

The parties agree that Plaintiff won a "Bravo" award in 2019. Plaintiff relies on this fact, and the asserted lack of negative feedback from Birnie, to imply that Niehaus and Feull's decision to place him on a PIP and later to terminate him could not have been based on his performance. (*See* ECF No. 47, at 11, 13.) However, the record on this point does not support an inference that the one-time receipt of a "Bravo" award is inconsistent with overall unacceptable job performance.

As to the allegation regarding Feuell reporting Birnie and Plaintiff for suspected misuse of travel funds, Plaintiff alleges that he "had negotiated as a part of his offer package that he was permitted to commute from Florida to Pittsburgh until 2020 and Defendant would cover the costs." (ECF No. 47, at 4.) Plaintiff claims that Feuell "admittedly had no knowledge [of] or input into this arrangement and yet reported Plaintiff for expensing his travel." (*Id.*) On the basis of this report, Plaintiff argues that Feuell "intentionally targeted Plaintiff and attempted to have him disciplined for nonsensical reasons on the basis of his age and/or gender." (*Id.* at 3–4.)

However, although the Business Incident Report generated as a result of the investigation characterizes Plaintiff's infractions at "minor in nature" (Def.'s App'x, at 162), it indicates that Plaintiff "was charging his travel to Pittsburgh" as opposed to "utilizing his relocation benefits" because he "was not informed of how to utilize his relocation benefits when traveling to Pittsburgh." (*Id.*) Moreover, though Plaintiff's infractions were characterized as minor, Birnie's were not. Birine was found to have improperly expensed significant travel, including unapproved weekend "work trips" with Plaintiff, and was ultimately required to pay back thousands of dollars

in expenses. (*Id.* at 161–67.) Plaintiff has submitted no record evidence that would suggest that this finding by Defendant as to Birnie was unfounded or otherwise in bad faith. Consequently, given how these matters were addressed by Defendant, they do not support an inference that Defendant singled Plaintiff out for harsher treatment than others.

**B. October 2019 through January 2020**

In October 2019, Honeywell centralized several functions, including marketing. (Pl.s' SMF ¶ 32.) As a result, Honeywell Voice, the unit within which Plaintiff worked, began to report directly into the Intelligrated business and Plaintiff began reporting directly to Niehaus rather than Birnie. (*Id.* ¶¶ 33–34.)

On November 11, 2019, Niehaus and Feuell placed Laymon on a PIP (later amended on November 18, 2019), which identified several areas of concern and associated action items, and set a deadline of December 16, 2019 for completion of the identified action items. (*See* Def.'s App'x, at 84.) Defendant contends that the action items were things Plaintiff should have already completed before he began reporting to Niehaus. (ECF No. 44, at 12.) For example, the document memorializing the PIP states as a concern that Plaintiff had failed to produce a formal, documented marketing plan and establish performance metrics. (Def.'s App'x, at 84.) The document identifies as an action item that Plaintiff was to "create a channel marketing strategy" and "develop a comprehensive channel partner marketing kit including collateral and other marketing materials." (*Id.*)

For his part, Plaintiff disputes that his performance was in any way lacking and argues that the PIP was wholly unwarranted. (*See* ECF No. 47, at 11–12.) Moreover, Plaintiff contends that he repeatedly asked for an updated job description but never received one.[5] (*Id.* at 2, 12.) Upon

---

[5] Feuell stated in her deposition that Plaintiff did not receive a new job description because his role had not changed; he and his team were simply moving into a new reporting structure. (*See* Pl.'s App'x, Feuell Dep., 55:12–25; 56:1–

receiving the PIP, Plaintiff told Niehaus and Feuell that he felt the PIP was "discriminatory" but did not identify a particular basis of any discrimination, for instance sex or age. (Pl.'s SMF ¶ 48.)

Plaintiff and Defendant disagree over the adequacy of Plaintiff's work product while on the PIP. On December 6, 2019, Plaintiff sent Niehaus a written response to the action items in the PIP. (*Id.* ¶ 53.) During a meeting later that day, Niehaus expressed dissatisfaction with Plaintiff's response, and in particular her view that the actions Plaintiff proposed to take in his written response was a list of tactics, not a comprehensive marketing strategy. (*Id.* ¶ 56.) Plaintiff "did not agree a documented plan was necessary or requested of other employees," but claims that he "did not refuse to provide one." (Pl's SMF ¶ 58.) Despite this, at no point does Plaintiff affirmatively state that he provided Niehaus with the items that she requested, nor does the record reflect that he ever did. (*See id.*)

On December 18, 2019, Niehaus told Plaintfiff that he had failed to complete the PIP. (*Id.* ¶ 60.) During that meeting, there was some discussion of whether an extension to the PIP would be helpful. In Plaintiff's version of events, "[p]laintiff was asked if he felt he could comply with an extension and Plaintiff voiced that he could not because nothing he did would satisfy Niehaus or Feuell due to their targeting of Plaintiff." (*Id.* at ¶ 61.) In Defendant's telling, Niehaus asked Plaintiff if he felt he could complete his PIP if Honeywell extended the deadline, but Plaintiff did not agree to the extension. (Def.'s SMF ¶ 59.)

On January 5, 2020, Plaintiff contacted Jennifer Carpenter, Defendant's Vice President of Human Resources, regarding his PIP, expressing concern that he had not formally heard back regarding its outcome and requesting that Defendant postpone the deadline for hm to relocate from Florida to Pittsburgh due to the pending PIP and a "disruptive and intimidating working

---

3.)

environment." (Pl.'s App'x at 117–18.) On January 13, at the request of HR, Niehaus filled out (and Feuell read and signed) a 2019 performance evaluation of Plaintiff which recommended the termination of his employment. (Pl.'s SMF ¶¶ 70–73.)

On January 15, 2020, Plaintiff contacted Carpenter again because two Honeywell employees (who are otherwise not relevant these events) allegedly had an email exchange regarding the reassignment of one of Plaintiff's direct reports to one of the individuals involved in the email exchange. (Pl.'s App'x, at 120.) Plaintiff was concerned about this exchange, and in his message to Carpenter, characterized his work environment as "disruptive and hostile." (*Id*.)

On February 1, 2020, Laymon's employment was terminated. (Pl.'s SMF ¶ 74.) Shortly thereafter, Laymon was replaced by a fifty-four (54) year old male who was an "internal" hire. (Def.'s SMF ¶ 76.)[6] Laymon was fifty-one (51) years old on the date of his dismissal. (*See* Pl.'s SMF ¶¶ 3, 74.)

## II.    PROCEDURAL BACKGROUND

On December 1, 2020, Laymon filed a Complaint (ECF No. 1)—which was amended on February 2, 2021 (ECF No. 9)—against Honeywell alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, and demanding a jury trial. Specifically, Plaintiff alleged: (1) discrimination and disparate treatment in violation of the ADEA; (2) hostile work environment in violation of the ADEA; (3) retaliation in violation of the ADEA; (4) gender discrimination (both hostile work environment and disparate treatment) in violation of Title VII;

---

[6] Plaintiff does not concede this, but instead notes that "he has no way of assessing whether [his alleged replacement] filled his exact role or was merely provided with the same job title for optics purposes." (Pl.'s SMF ¶ 78.) However, Plaintiff cites to nothing in the record to contradict the statement of Carpenter regarding his replacement. Therefore, for the purposes of resolving this Motion, the Court deems Defendant's assertions regarding Plaintiff's replacement to be admitted.

and (5) retaliation in violation of Title VII. (ECF No. 9, at 8–13.)

On February 8, 2021, Honeywell filed an Answer (ECF No 10). On February 8, 2022, Defendant's filed the instant Motion for Summary Judgment (ECF No. 43) as to all claims, and Plaintiff filed a Response in opposition on March 10, 2022 (ECF No. 47). On March 24, 2022, Defendant filed a Reply (ECF No. 48). Thus, the Defendant's Motion for Summary Judgment is ripe for disposition.

### III.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *Boyle v. Cnty. of Allegheny,* 139 F.3d 386, 393 (3d Cir. 1998). Instead, the court must consider the evidence and all reasonable inferences which may be drawn from it in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If a conflict arises between the evidence presented by the parties, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

However, "[a]lthough courts are to resolve any doubts as the existence of genuine issues of fact against the part[y] moving for summary judgment, Rule 56(e) does not allow a party resisting" a summary judgment motion "to rely merely upon bare assertions, conclusory allegations[,] or suspicions." *Fireman's Ins. Co. v. Dufresne*, 676 F.2d 965, 969 (3d Cir. 1982). When a party with the burden of proof fails to produce sufficient record evidence to prove their

claim, summary judgment may be granted. *Saldana v. K-Mart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). And when the non-moving party bears the burden of proof on an issue, it may not merely rely on the allegations in its pleadings to survive summary judgment but must set forth sufficient facts showing that there is a genuine issue for trial. *Id.*

## IV.   DISCUSSION

The parties are not in disagreement, in any significant respect, about what the applicable law is. Instead, the parties disagree about whether the facts of record—even taken in the light most favorable to Plaintiff, as required at the summary judgment stage—could support the inference that Defendant has violated the law. After careful review of the briefs and the record, the Court agrees with Defendant that, as to each of the claims set forth in Plaintiff's Amended Complaint (ECF No. 9), the record could not reasonably be understood to support the inference that Plaintiff is entitled to relief. For ease of treatment, the Court combines claims where the legal standard is the same or similar.

### A.   AGE AND SEX DISCRIMINATION (DISPARATE TREATMENT)

Plaintiff claims that Defendant "violated the ADEA by disparately treating [him] based on age by terminating [him], among other examples." (ECF No. 9, at 9.) Plaintiff also claims that Defendant violated § 626 of the ADEA, which makes it unlawful, *inter alia*, to "discharge any individual or otherwise discriminate against an individual . . . because of such individual's age," 29 U.S.C. § 626, "by discriminating against Plaintiff." (ECF No. 9, at 10.)

Similarly, Plaintiff alleges that Defendant violated Title VII by "discriminating against Plaintiff because of his gender and/or in the alternative, his age." (*Id.* at 12.) The Court notes that, by its plain terms, Title VII prohibits discrimination against an individual on the basis of that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Thus, age is not

a proscribed basis for discrimination under Title VII, and the Court disregards any such claims as meritless. *See, e.g.*, *Witmer v. Arthur J. Gallagher & Co*, 08-cv-1329, 2009 WL 904877, at *3–4 (M.D. Pa. Mar. 31, 2009) (dismissing an age discrimination claim brought under Title VII because "[a]ge is not a proscribed basis for discrimination under Title VII").

### i.   The Parties' burdens under the *McDonnell Douglas* framework

The Parties agree that there is no direct evidence of discrimination in the record, and therefore the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *See Smith v. City of Allentown*, 589 F.3d 684, 689–90 (3d Cir. 2009) (applying the *McDonnell Douglas* framework to ADEA claims); *Scheidemantle v. Slippery Rock Univ. State Sys. Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (applying the *McDonnell Douglas* framework to a Title VII claim).

First, to establish a *prima facie* case of discrimination, a plaintiff must show by that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) defendant took an adverse employment action against him; (4) in circumstances that give rise to an inference of unlawful discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

In the ADEA context, the first element is satisfied when Plaintiff is over forty years of age. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). Furthermore, the fourth element is sometimes phrased as requiring a showing that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Id.* However, the fourth element may be satisfied even without evidence of a younger replacement if plaintiff points to employer acts which, "if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

In the Title VII context, the first element is met whenever the plaintiff is employed by an employer that is within the scope of Title VII. *See Gen. Tel. Co. of NW, Inc. v. EEOC*, 446 U.S. 318, 323 (1980) ("Title VII protects all employees of and applicants for employment with a covered employer . . ."). Moreover, the fourth element is satisfied if Plaintiff shows that "members of the opposite sex were treated more favorably." *Burton*, 707 F.3d at 426.

If a plaintiff meets this initial burden, the defendant must advance a legitimate nondiscriminatory reason for the adverse employment action. *Id.* at 425. A defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse action, but the defendant is not required to prove that the articulated reason actually motivated the discharge. *Id.* at 426; *see also Harper v. Odle Mgmt. Co, LLC*, No. 19-cv-597, 2021 WL 732718, at *5 (W.D. Pa. Feb. 25, 2021).

If the defendant produces such a nondiscriminatory reason, "the burden then rebounds back to the plaintiff to discredit that legitimate nondiscriminatory reason" by showing that it is pretextual. *Harper*, 2021 WL 732718, at *4, 6. There are two ways for a plaintiff to demonstrate that an employer's purported reason is pretextual. First, the plaintiff can point to evidence that would allow a factfinder to disbelieve the employer's stated reason for the adverse employment action, by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." *Willis*, 808 F.3d at 644 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). The second way a plaintiff can demonstrate pretext is to "point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause of the employer's action.'" *Id.* (quoting *Fuentes* at 764).

11

As to Plaintiff's ADEA claim, Plaintiff must show that "but for" the plaintiff's age, the defendant would not have taken the adverse employment action in question. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). As to Plaintiff's Title VII disparate treatment claim, he must show that his gender was a motivating cause of the adverse employment action in question. *Univ. Tex. Southw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) ("An employee who alleges status-based discrimination under Title VII need not show" but-for causation. "It suffices instead to show that the motive to discriminate was one of the employer's motives.").

### ii. Plaintiff has failed to carry his burden under *McDonnell Douglas*

Plaintiff has not met the initial burden of making out a *prima facie* case of disparate treatment discrimination under either the ADEA or Title VII. The first and third elements are not at issue. As to Plaintiff's ADEA claim, Defendant has not disputed that Plaintiff was over forty years of age during the time period at issue here, and so he is covered by the ADEA. As to Plaintiff's Title VII claim, Defendant has not disputed that it employed Plaintiff or that it is the type of employer covered by Title VII. The parties also agree that Plaintiff was terminated from such employment, and that a termination constitutes an adverse employment action sufficient to satisfy the third element of the *McDonnell Douglas* framework.[7]

As to the second element, Plaintiff has argued that he was "clearly qualified for" his position because "he was hired for" the role, he earned a Bravo award while in the role, and "there are no documented performance issues and no indication that Plaintiff was failing to meet performance metrics." (ECF No. 47, at 17.) Though the burden lies with Plaintiff to make the initial showing that he was qualified for his job, the Court notes that Defendant has argued only in passing, and in its Reply, that Plaintiff is "unable to show that he was qualified for his position."

---

[7] As a matter of law, placement on a PIP "is not an adverse employment action absent accompanying changes to pay, benefits, or employment status." *Reynolds v. Dep't of Army*, 439 F.App'x 150, 153 (3d Cir. 2011).

(ECF No. 48, at 2.) As Defendant has presented no substantive argument that Plaintiff was not objectively qualified for his job and Plaintiff's burden at this point is not onerous, the Court will treat the second element of the prima facie case as established for these purposes.

However, Plaintiff has not carried his burden as to the fourth element of *McDonnell Douglas* as to either his ADEA or Title VII clam.

As to the ADEA claim, Plaintiff has not shown that he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. Plaintiff was fifty years old when he was hired and fifty-one years old at the time he was discharged. Defendant asserts that Plaintiff was replaced by a fifty-four (54) year old male who was an internal hire. As set forth above, Plaintiff has not directly claimed that Defendant's assertions regarding his replacement are factually false. Instead, Plaintiff argues, while pointing to no record evidence whatsoever, that his "replacement was selected in a direct attempt to circumvent litigation." (ECF No. 47, at 18.) Moreover, in his (improper) Statement of Disputed Facts, Plaintiff argues that he "has no way of assessing whether" his alleged replacement "filled his exact role or was merely provided with the same job title for optics purposes." (Pl's SMF ¶ 78.)

A motion for summary judgment is usually filed after discovery for a reason. If Plaintiff suspected that his purported replacement was in fact not performing the same duties that he was, or that there was something improper about the process of selecting his purported replacement, he could have sought information regarding those claims in discovery, put relevant evidence into the record, and incorporated it into his response in opposition to the summary judgment Motion. In other words, Plaintiff could have used actual factual information gained through discovery to argue that, although he was replaced by a male who is his senior and the rough contemporary of the decision-makers that he is accusing of age discrimination, nonetheless the circumstances somehow

support the inference that he was treated differently than he otherwise would have been due to his age. Although, at the summary judgment stage, the court resolves doubts as to the existence of a genuine issue of fact in the non-moving party's favor, Plaintiff cannot survive a summary judgment motion, as he attempts to do here, by "rely[ing] merely upon bare assertions, conclusory allegations[,] or suspicions," *Fireman's Ins. Co.*, 676 F.2d at 969. Thus, Plaintiff has failed to advance facts that could support all of the elements of his prime facie case.

Similarly, as to Plaintiff's Title VII claim, he fails to carry his burden to show that members of the opposite sex were treated more favorably—either in selecting his replacement or in any other capacity. For instance, his duties were assumed by another, male employee who is his senior. Plaintiff offers no argument beyond broad, conclusory statements that he was targeted due to his gender, s*ee, e.g.*, ECF No. 47, at 11 ("Feuell concedes she had no knowledge of what Plaintiff's offer contained nor did she have any indication the Plaintiff was abusing his card. She made assumptions based upon Plaintiff's age and/or gender."); *id.* at 12 ("Feuell isolated Plaintiff based upon his age and/or gender from the outset and as soon as she was the sole decisionmaker used the PIP to get rid of him."), and the Court will not supply arguments or record facts on his behalf.

Even if Plaintiff had made out a prima facie case of age discrimination, the Defendant has provided a legitimate, nondiscriminatory reason for Plaintiff's discharge: Plaintiff's performance.[8] (ECF No. 44, at 15.) Plaintiff argues that this explanation is pretextual, as evidenced by the following facts: he had been working with Feuell and Niehaus for less than six weeks before he was placed on a PIP, "in that time" he did not receive a performance evaluation and was not provided with a job description or list of performance metrics despite having requested them. (ECF

---

[8] Defendant also notes that Plaintiff himself provides an alternative, nondiscriminatory reason for his termination; in Plaintiff's view, he was terminated because Niehaus viewed him as an obstacle to her ability to control the Intelligrated division. (Def.'s App'x, Laymon Dep., 180:12–20.) If that were the case, it is facially not violative of the law.

No. 47, at 13.)

These facts do not satisfy either method of showing that Defendant's stated reason for Plaintiff's discharge is pretextual. As to the first avenue: terminating someone less than six weeks after they are reassigned to a new supervisor, with whom they have already had some interaction, is not so implausible or incoherent as to raise the inference that Defendant's explanation is pretextual. Notably, even if the Court were inclined to conclude that the relatively short time between Plaintiff's being reassigned to Niehaus and being placed on a PIP were some evidence of discrimination, Plaintiff apparently concedes that Niehaus felt that the action items assigned to Plaintiff in the PIP were tasks that Plaintiff should have completed while he was still reporting to Birnie. (Def.'s App'x, Laymon Dep., 165:21–25, 166:1–4.) And Plaintiff does not offer any evidence to demonstrate that Niehaus' clearly communicated expectations were either in bad faith or patently unreasonable, nor does he ever argue with record evidence that he actually completed the tasks assigned in the PIP.

As to the second avenue for demonstrating pretext: Plaintiff has not pointed to record evidence—beyond conclusory statements and suspicions—to support his claim that discriminatory animus was either a motivating factor or but-for cause of his termination. Again, Plaintiff points out that he had been reporting to Niehaus for less than six weeks before he was placed on a PIP, he received no performance evaluation during his entire time at Honeywell, and he was not given a job description or list of metrics despite having requested those items. Even taking all of those pieces of record evidence in the light most favorable to Plaintiff, they do not suggest that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause of the employer's action.'" *Willis*, 808 F.3d at 645. Moreover, although Plaintiff complains that he "was not provided with a job description or list of performance metrics" (ECF No. 47, at 13), he

does not explain why the PIP did not make Defendant's expectation of him clear or advance record evidence to support an inference that similarly-situated, younger or non-male employees were treated more favorably in these regards.

## B. **HOSTILE ENVIRONMENT**

Plaintiff also claims that he was subjected to a hostile work environment due to his age (ECF No. 9. at 10) and his gender (*id.* at 12). In response, Defendant advances two arguments: first, that Plaintiff has failed to demonstrate an issue of fact for trial under the applicable substantive law (ECF No. 44, at 17–19), and second, that—in failing to respond substantively to Defendant's Motion for Summary Judgment on the hostile environment claims—Plaintiff has abandoned those claims, entitling Defendant to summary judgment on them (ECF No. 48, at 6–7). The Court agrees with Defendant in both regards.

As to the substantive law, in order to succeed on a hostile work environment claim, a plaintiff must show: (1) that he suffered intentional discrimination based on membership in a protected class; (2) severe or pervasive conduct; (3) that the discrimination detrimentally affected him; (4) that the discrimination would have detrimentally affected a reasonable person in similar circumstances; and (5) the existence of respondeat superior liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (Title VII).[9] The conduct must be so severe or pervasive as "to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Moody v. Atl. City Bd. Educ.*, 870 F.3d 206, 214 (3d Cir. 2017).

Because Plaintiff fails to offer argument, or explicitly advance record facts, in support of his hostile work environment claim, it is not clear which record facts form the basis of his hostile

---

[9] The Third Circuit has not yet squarely decided whether the ADEA supports hostile work environment claims. *See Slater v. Susquehanna Cnty.*, 465 F. App'x 132, 138 (3d Cir. 2012) ("We assume, without deciding, that the ADEA makes available a hostile environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim.").

environment claim. Based on the Court's review of the record, there is nothing obvious from the record that would support the inference that Plaintiff suffered hostile workplace treatment—let alone hostile treatment to such a severe and pervasive degree as to constitute a hostile work environment. That is, there is no evidence in the record that Plaintiff was targeted, humiliated, threatened, deprived of opportunities, or treated differently because of his age or gender with such frequency or severity as to constitute an alteration of the terms and conditions of his employment or which could be defined as "severe or pervasive." Feuell's report to HR regarding Plaintiff and Birnie's allegedly inappropriate expense submissions certainly does not reach that high bar given its outcome, and the balance of Plaintiff's general assertions are, at most, a garden variety disagreement between Plaintiff and Defendant as to his job performance. As a matter of law, Plaintiff's assertions regarding his treatment at work are not sufficiently severe or pervasive that a reasonable jury could find for him on the issue of hostile environment.

Even if the record somehow supported Plaintiff's claims on this point, Defendant also correctly points out that Plaintiff has abandoned his hostile work environment claims. Defendant's Motion for Summary Judgment plainly states that it is seeking summary judgment as to Plaintiff's hostile environment claims. (*See* ECF No. 44, at 17–19.) Plaintiff's Response in Opposition includes a heading entitled "hostile work environment," but beneath that heading, the discussion is comprised almost entirely of substantive law regarding disparate treatment. (*See* ECF No. 47, at 8–13.) The only discussion that could be generously construed to concern Plaintiff's hostile environment claim is the relatively brief discussion regarding when employers can be held strict liable for the harassing behavior of their employees. (*Id.* at 10.)

Plaintiff's failure to respond substantively to Defendant's Motion for Summary Judgment on the hostile work environment claim amounts to an abandonment those claims, and the entry of

summary judgment as to those claims is appropriate. *See, e.g.*, *McCarthy v. Int'l Assoc. of Machinists & Aerospace Workers*, 2021 WL 5766569, at *2 n.3 (3d Cir. Dec. 6, 2021) ("Plaintiffs abandoned their claims under the LMRA . . . by omitting any reference to them in their opposition to Defendant's motion for summary judgment.); *Carroll v. Lancaster Cnty.*, 301 F. Supp. 3d 486, 511–12 (E.D. Pa. 2018) (considering a claim abandoned when not addressed in brief in opposition to summary judgment).

## C. <u>RETALIATION</u>

Finally, Defendant seeks summary judgment as to Plaintiff's retaliation claims. Retaliation claims proceed under the same general *McDonnell Douglas* framework described above. *See Carvalho-Grevious v. Del. St. Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). To establish a *prima facie* case of unlawful retaliation, a Plaintiff must show that he (1) engaged in a protected activity; (2) suffered an adverse employment action either after or contemporaneous with her protected activity; and (3) a sufficient causal connection between her protected activity and the employer's adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). Moreover, at least as to Plaintiff's Title VII[10] retaliation claim, "to prove causation at the pretext stage, the plaintiff must show that []he would not have suffered an adverse employment action 'but for' [his] protected activity." *Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 96 (3d Cir. 2016) (citing *Nassar*, 570 U.S. at 362).

Plaintiff argues that he engaged in three protected activities: first, when he was placed on the PIP, he complained directly to Feuell and Niehaus that their behavior was "discriminatory"; (2) in communication with HR in January 2020, Plaintiff expressed concerns about relocating to

---

[10] The Third Circuit has not yet squarely addressed whether the "but-for" causation test that applies to Title VII's anti-retaliation provision (and to ADEA disparate treatment claims) also applies to retaliation claims under the ADEA. *See Riley v. St. Mary's Med. Ctr*, No. 13-cv-7205, 2014 WL 1632160, at *5 n.4 (E.D. Pa. Apr. 23, 2014).

Pittsburgh because his work environment was, in his view, "disruptive and intimidating"; and (3) in communication with HR regarding the rumored reassignment of one of his subordinates, Plaintiff described his work environment as "disruptive and hostile."

These complaints are, as a matter of law, too vague and conclusory to constitute protected activity. At a minimum, any such complaints must be sufficiently specific to put the employer on notice of the specific kind of unlawful discrimination being alleged and being complained of. *See Stone v. Trader Joe's Co.*, 186 F. Supp. 3d 395, 403 (E.D. Pa. 2016). Though context can suffice to fill gaps, "a general complaint of unfair treatment is insufficient" to constitute protected activity. *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130, 135 (3d Cir. 2006); *see also id.* ("opposition to an illegal employment practice" must at least "identify the employer and the practice" at issue); *Sanchez v. SunGard Availability Svcs. LP*, 362 F. App'x 283, 287–88 (3d Cir. 2010) (plaintiff's complaint to coworkers over lunch that he was being discriminated against, harassed, and bullied was "too vague to constitute protected activity"); *Barber v. CSX Dist. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995) (plaintiff's formal letter to HR questioning hiring decision and stating that plaintiff was "puzzled as to why the position was awarded to a less qualified individual" but not specifically complaining of age discrimination does not constitute a protected activity for ADEA retaliation purposes).

Even if these complaints constituted protected activity (and they do not), Plaintiff has not advanced sufficient record evidence to support the inference that his complaints were the cause, let alone the "but-for" cause, of his termination. As discussed at length above, Defendant has provided ample evidence to show that Plaintiff was terminated for legitimate, non-discriminatory reasons. As also set forth above, Plaintiff's three complaints took place between mid-November of 2019 and mid-January of 2020. Plaintiff was terminated on February 1, 2020. Though all three

of Plaintiff's allegedly protected activities took place in relatively close temporal proximity to his termination, and "temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn," *Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005), when temporal proximity stands alone as evidence of a causal relationship between protected activity and an adverse employment action, the temporal proximity must be "unusually suggestive" of a retaliatory motive before causation will be inferred. *Baker v. United Def. Indus.*, 403 F. App'x 751, 758 (3d Cir. 2010) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

Even construing the factual record here in the light most favorable to Plaintiff, the Court concludes that the temporal proximity between Plaintiff's three complaints and his termination is not unusually suggestive of a retaliatory motive. As discussed at length above, Defendant has provided ample evidence to show that Plaintiff's employment was terminated for legitimate, non-discriminatory reasons. The terms of Plaintiff's PIP stated that his failure to complete the action items it specified may result in his termination. Plaintiff does not contest Defendant's assertion that he did not complete those items. The Defendant's decision to "proceed[] along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).

Because Plaintiff has not carried his burden at least to "show" with record evidence that he engaged in a protected activity or that his complaints could be found to be the cause of the termination of his employment, Plaintiff's retaliation claims fail, and summary judgment is appropriate.

V.      **<u>CONCLUSION</u>**

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 43) is granted in full, and summary judgment is entered in Defendant's favor and against Plaintiff as to all claims. The Clerk will close the case on the docket.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  December 9, 2022